UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20243-CR-COOKE/O'SULLIVAN(s)

UNITED STATES OF AMERICA,

v.

BRADLEY JASON KANTOR,

Defendant.
_____/

### FACTUAL PROFFER

The United States of America and Bradley Jason Kantor (the "Defendant" or "KANTOR") agree that had this case gone to trial, the following facts and assertions are true and correct, and that the United States would have proven these facts and assertions, among others, beyond a reasonable doubt:

Beginning in or around at least April 2013 and continuing through in or around at least March 2017, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the Defendant knowingly and willfully combined, conspired, confederated, and agreed with others: (1) to submit false and fraudulent claims to United Healthcare ("United") via interstate wire communication, in violation of Title 18, United States Code, Section 1349; and (2) to conduct financial transactions involving the proceeds of the Defendant's conspiracy to commit health care fraud and wire fraud, with the intent to promote the carrying on of that conspiracy, in violation of Title 18, United States Code, Section 1956(h).  On various dates during that same period, the Defendant also knowingly used, without lawful authority, the means of identification of other people during and in relation to the Defendant's submission of false and fraudulent claims to United, in violation of Title 18, United States Code, Section 1028A(a)(1).



During the relevant time period, the Defendant owned and operated Mobile Diagnostic Imaging, Inc. ("MDI"), a medical clinic located in the Southern District of Florida that purportedly provided commercial insurance beneficiaries, including United beneficiaries, with various medical treatments and services, including antigen therapy services. To enable MDI to submit as many health care insurance claims to United as possible, thereby enriching the Defendant, the Defendant recruited and paid kickbacks to various conspirators in exchange for referring United beneficiaries to MDI. The Defendant then used these beneficiaries to submit false and fraudulent health care insurance claims to United, including for antigen therapy services, regardless of whether the beneficiaries needed or received such services.

For example, beginning in or around 2014 and continuing through at least in or around 2016, the Defendant entered into an agreement with conspirator Gaetano Tusa in which the Defendant agreed to pay kickbacks to Tusa in exchange for Tusa recruiting and referring beneficiaries to MDI to be used in conjunction with false and fraudulent billing of United by MDI. Tusa, was the owner and operator of Rocco's Pizza, Inc. ("Rocco's"), a restaurant located in the Southern District of Florida. The Defendant instructed Tusa to enroll Tusa's employees at Rocco's in a fully insured, employer-sponsored group plan with United. The Defendant offered to pay, and did pay, the United insurance premiums for Tusa's employees. The Defendant also offered to pay, and did pay, kickbacks to Tusa based on the number of beneficiaries Tusa recruited and referred to MDI. Tusa enrolled his employees in the United group plan as instructed and provided their United insurance information to the Defendant. The Defendant then used these beneficiaries to submit health care insurance claims to United, in which the Defendant, via MDI, falsely represented that various medical services, including antigen therapy services, had been provided and were medically necessary. In total, the Defendant, via MDI, fraudulently billed

United approximately $3.9 million for medical services purportedly provided by MDI to members of Rocco's United employer-sponsored group plan over the one year period beginning in or around August 2015 and continuing through in or around August 2016. United paid MDI approximately $1.5 million on these fraudulent claims.

Furthermore, to maximize the number of beneficiaries for whom the Defendant could fraudulently bill United, the Defendant also encouraged his conspirators to fraudulently enroll their friends and family members in employer-sponsored group plans with United, and the Defendant paid kickbacks to his conspirators for each friend and family member the conspirator enrolled and referred to MDI for use in the Defendant's fraudulent billing scheme. For example, the Defendant further agreed with Tusa that, in exchange for additional kickbacks, Tusa would enroll himself and his immediate family in a fully insured, employer-sponsored group plan with United, so that the Defendant, via MDI, could falsely and fraudulently bill United for medical services purportedly provided by MDI to Tusa and Tusa's family. The Defendant, via MDI, fraudulently billed United approximately $1.1 million for medical services purportedly provided to Tusa and Tusa's family, though the Defendant knew that MDI had not provided any such medical services. United paid MDI approximately $250,000 on these fraudulent claims.

The Defendant entered into similar kickback arrangements with the owners of several other South Florida companies, in which the Defendant paid kickbacks to the owners of these companies to induce them to enroll their employees in United employer-sponsored group plans; the conspiring owners referred the employees to MDI; and the Defendant, via MDI, then used the newly-enrolled employee-beneficiaries to bill United for various medical services, including antigen therapy services, which the Defendant knew had not been provided and/or were not medically necessary.



For example, beginning in or around 2014 and continuing through at least in or around 2016, the Defendant entered into an agreement with conspirator Christopher Burcel in which the Defendant agreed to pay kickbacks to Burcel in exchange for Burcel recruiting and referring beneficiaries to MDI to be used in conjunction with false and fraudulent billing of United by MDI. To enable this fraudulent billing, Burcel hired various friends and acquaintances as employees of C Burcel Inc., a shell company of which Burcel was the president and registered agent. The Defendant and Burcel then enrolled these C Burcel Inc. employees in a fully insured, employer-sponsored group plan with United, so that the Defendant, via MDI, could fraudulently bill United for medical services purportedly provided by MDI to these employees. The Defendant then used these beneficiaries to submit health care insurance claims to United, in which the Defendant, via MDI, falsely represented that various medical services, including antigen therapy services, had been provided and were medically necessary. In total, the Defendant, via MDI, fraudulently billed United approximately $1.9 million for medical services purportedly provided by MDI to members of the C Burcel Inc. United employer-sponsored group over the four month period beginning in or around August 2015 and continuing through in or around December 2015. United paid MDI approximately $600,000 on these fraudulent claims.

Most of the employee-beneficiaries who were used by the Defendant and his conspirators to commit the fraudulent billing scheme remained unaware that the Defendant and MDI had been billing United on their behalf, because the beneficiaries rarely received Explanation of Benefits forms ("EOBs") or any other communications from United. This is because the Defendant, in order to avoid alerting beneficiaries that they were being used to perpetrate a fraud, did not list beneficiaries' home addresses or personal phone numbers during enrollment (a process that the Defendant handled himself, with information provided by the conspiring company owners).



Instead, the Defendant and his conspirators listed the business address and business phone number of the respective employer for each beneficiary so that the Defendant's conspirators could intercept EOBs and phone calls intended for the employee-beneficiaries.

The Defendant used the means of identification of many of these same employee-beneficiaries, without their authorization, in order to submit false and fraudulent health care insurance claims to United. For example, on or about June 7, 2016, the Defendant knowingly used the name, date of birth, and United subscriber identification number belonging to N.R., without lawful authority from N.R., in order to submit false and fraudulent claims to United.

The Defendant also conspired to commit money laundering in order to promote his conspiracy to commit health care fraud and wire fraud. For example, after United paid the Defendant, via MDI, for fraudulent health care claims submitted pursuant to the Defendant's fraud scheme, the Defendant transferred those fraudulent proceeds to Tusa, with the intent that Tusa use those proceeds to pay the insurance premiums for the Rocco's United employer-sponsored group plan. In other words, the Defendant distributed the fraudulent proceeds of his conspiracy to commit health care fraud and wire fraud to conspirators, including Tusa, in order to induce the enrollment of additional beneficiaries for the Defendant's health care fraud and wire fraud conspiracy, thereby furthering the fraud.

At all times, the Defendant was the organizer and leader of this extensive criminal enterprise, as he directed the conspiracy to commit health care fraud and wire fraud and the conspiracy to commit money laundering, both of which involved more than five participants.

In total, during the relevant time period, the Defendant submitted and caused MDI to submit, via interstate wire communication, approximately $41,915,751 in claims to United which falsely and fraudulently represented that various health care benefits had been provided by MDI to

beneficiaries of United. As a result of these false and fraudulent claims, United made payments to MDI, through its corporate bank accounts which were controlled by the Defendant, in the approximate amount of $12,113,514.

The above-detailed facts are corroborated by, among other things, claims and billing data, bank records, business records, and information obtained through cooperating conspirators and other witnesses.

[THIS SPACE INTENTIONALLY LEFT BLANK]



The information contained in this proffer is not a complete recitation of all the facts and circumstances of this case, but the parties admit it is sufficient to prove beyond a reasonable doubt violations of Title 18, United States Code, Section 1349, that, is, Conspiracy to Commit Health Care Fraud, Title 18, United States Code, Section 1028A(a)(1), that is, Aggravated Identity Theft, and Title 18, United States Code, Section 1956(h), that is, Conspiracy to Commit Money Laundering, as charged in the Superseding Indictment.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 10/18/2021    By: _____
MICHAEL GILFARB
ASSISTANT UNITED STATES ATTORNEY

Date: 10/18/2021    By: _____
MICHAEL B. HOMER
ASSISTANT UNITED STATES ATTORNEY

Date: 9/8/2021      By: _____
ERIC SCHWARTZREICH
COUNSEL FOR DEFENDANT

Date: 9/9/2021      By: _____
BRUCE ZIMET
COUNSEL FOR DEFENDANT

Date: 9/4/21        By: _____
BRADLEY JASON KANTOR
DEFENDANT